870 A.2d 292

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. JOANNE BRENNAN, DEFENDANT–RESPONDENT.

Argued September 28, 2004—Decided April 13, 2005.

*Simon Louis Rosenbach,* Assistant Prosecutor, argued the cause for appellant (*Bruce J. Kaplan,* Middlesex County Prosecutor, attorney).

*Steven D. Altman,* argued the cause for respondent (*Benedict and Altman,* attorneys; *Mr. Altman* and *Sue E. Young,* on the brief).

Justice LaVECCHIA delivered the opinion of the Court.

This case, like its companion, *State v. B.H.,* 183 *N.J.* 171, 870 *A.2d* 273 (2005), decided today, concerns battered woman syndrome and how it may be used by a defendant claiming a duress defense under *N.J.S.A.* 2C:2–9. Briefly, we summarize the facts and procedural posture of this appeal.

Joanne Brennan was employed as the tax collector for the City of South Amboy for almost twenty-five years. Brennan was accused of stealing from her employer more than $250,000 between January 1996 and December 2001. Allegedly Brennan pocketed cash payments of taxes made by homeowners.

On June 5, 2002, in a statement to investigators from the Middlesex County Prosecutor's Office, Brennan admitted to the theft. She told the investigators that she deposited some of the funds in an account with the Raritan Bay Federal Credit Union, but that she sent most of the purloined funds to her thirty-eight year old son, Francis, who lived in Florida, because he had been blackmailing and harassing her for years. She was indicted for official misconduct, in violation of *N.J.S.A.* 2C:30–2, and theft by failure to make proper disposition of property received, in violation of *N.J.S.A.* 2C:20–9.

The defense retained Dr. Chester L. Trent to conduct a forensic psychiatric evaluation of Brennan. Brennan told Dr. Trent that she acquiesced to her son's demands for money because Francis made her fear for her life and because she was afraid that he would tell her husband that she had been sending money to him. She stated that Francis had been terrorizing her for years. She described him as a "difficult" child who had begun striking her

when he was a freshman in high school. By the time he was sixteen, Brennan's husband threw him out of their home because his behavior was uncontrollable. Francis quit high school, got involved with drugs, and drifted from job to job until he was incarcerated for attempting to rob a convenience store. Upon his release, Francis returned home to live with his parents. Because he persisted in attacking his mother physically and verbally, Brennan obtained a restraining order. She told Dr. Trent that she obtained the order approximately fifteen or sixteen years earlier and, therefore, could not recall its specific details. Francis moved to Florida once she got the restraining order and he has resided there for more than fourteen years.

While in Florida, Francis would telephone his mother at her home and job to demand money. The harassing calls were described as relentless and vulgar. When Francis traveled to New Jersey for visits, he would seek her out and assault her. Brennan described Francis as a "stalker" and claimed that it was because of his persistent abusive behavior that she acquiesced to his demands for money. Brennan told Dr. Trent that she obtained money for Francis from her personal savings, through credit card cash advances, and by embezzling from her employer. She often wrote the word "duress" on the memo line of the checks she sent to Francis.

After conducting several interviews with Brennan and her family, Dr. Trent concluded that her "history and situation fully meet the requirements for her being categorized as a battered woman, a victim of physical and psychological abuse on repeated occasions by a man in order to coerce her to do something he wants her to do without concern for her rights." Dr. Trent cited our decision in State v. Kelly, 97 N.J. 178, 478 A.2d 364 (1984), as well as Lenore Walker's 1980 treatise The Battered Woman. His conclusion was based on Brennan's relationship with Francis and her description of a few incidents of abuse by her husband that she said took place at the beginning of their marriage. In a psychiatric report submitted to the court pre-trial, Dr. Trent opined that

"the psychological impact of being battered can cause women in many instances to feel trapped, demoralized and unable to deal with their abusive coercive relationships except by submission or compliance to the man's demands, in this case, for money." The defense notified the State of its intent to raise the defenses of necessity and duress based on Dr. Trent's report.

The State filed a notice of motion to bar the psychiatric testimony in support of both of these defenses. Relying on the Appellate Division's decision in *State v. B.H.,* 364 *N.J.Super.* 171, 834 *A.*2d 1063 (2003), the trial court held that the expert witness testimony was admissible to support the duress defense, but barred its use in connection with a defense of necessity. The State moved for leave to appeal, which was granted, and then moved for direct certification, which we granted. *State v. Brennan,* 180 *N.J.* 446, 852 *A.*2d 186 (2004).

Because of our decision in *B.H.* affirming with modification the Appellate Division decision in that matter, *supra,* 183 *N.J.* at 200–02, 870 *A.*2d at 290–92, we vacate the order of the trial court below and remand for further proceedings. The court should analyze anew all issues about defendant's duress defense in light of *B.H.*

*For vacation and remandment—*Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—7.

*Opposed—*None.